# Central of Georgia Ry. Co. *v.* Storrs.

## *Damage for Injury to Passenger.*

(Decided Feb. 10, 1910.   Rehearing denied Dec. 22, 1910.
53 South. 746.)

1. *Carriers; Passengers; Negligence; Jury Question.*—Where the action was for injury to a passenger by getting his foot caught between the bumpers of two cars as he was crossing from one car to another while the train was slowing up to stop at a station, and it was alleged to have been caused by some improper action of the air-brake, or because the space was not covered, and there was proof tending to support these allegations, the question as to the carrier's negligence was one for the jury.

2. *Same; Who are Passengers; Train Stopped.*—Passengers may walk out of a car in which they are seated on to the station platform, or over the car platform on to another car while the train is stopped at a station without losing their right to protection as passengers.

3. *Same; Defective Platform; Evidence.*—Where the issue was whether the space between passenger cars on a train was negligently left uncovered, it was competent to show whether any cars had been constructed within the last five years with platforms like those on the cars in question.

4. *Same.*—Where a witness testified that he had traveled extensively over railroads in the United States, except on the Pacific Coast, and especially, over all the railroads in Alabama, he was properly allowed to testify as to how passenger car platforms were arranged on other well regulated railways, one of the issues being as to the carrier's negligence in failing to cover the space between passenger car platforms.

5. *Damages; Personal Injury; Earnings; Instructions.*—Where there was no intimation that his salary was speculative or that it was continued to him while he was not working, and the injured person testified that he was earning $1,500 for six month's work, but was not able to continue work after his injury, it was proper to refuse a charge that there could be no recovery for loss of salary between the date of the injury and the bringing of the suit.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

Action by Charles P. Storrs against the Central of Georgia Railway Company for personal injuries received while a passenger. Judgment for plaintiff, and defendant appeals. Affirmed.

The facts sufficiently appear in the opinion of the court. The following charges were refused to the defendant: (1) General affirmative charge. (4) "If you believe the evidence in this case, there was no defect in the construction of the coach or coaches in operation by the defendant at the time and place where plaintiff received his injuries." (5) "There is no evidence in this case of any defect in the equipment of the defendant's train at the time and place when and where the plaintiff was injured." (6) "Under the evidence in this case there can be no recovery for any alleged defect in the cars in use on the occasion when and where plaintiff was injured." (7) "It does not appear from the evidence in this case that defendant violated any duty it owed to the plaintiff in so far as the equipment of defendant's train was concerned." (9) "There can be no recovery in this case for any loss of salary to the plaintiff during any of the period intervening between the injury and the bringing of this suit."

STEINER, CRUM & WEIL, for appellant. It cannot be said that the defendant owed the plaintiff any duty not to move the train as there was no pretense that any of the servants or agents of the defendant knew or by the

exercise of due care ought to have known that appellee was in any danger of injury from the moving train.—*Foley v. R. R. Co.,* 7 L. R. A. (N. S.) p. 1076; Moore on Carriers, pp. 660-1 and note 40. Nor can it be said that there was any defect in the cars. It follows, therefore, that defendant was entitled to the affirmative charge. Conceding, however, that the appellant was negligent, it affirmatively appears that the defendant was guilty of negligence which contributed to his own injury.—*Mont. St. Ry. Co. v. Smith,* 146 Ala. 316. While it may not be negligence per se for a party to go upon the platform of a car while stationary or in motion, when one undertakes to do so, he must exercise for his own safety a degree of care commensurate with the increased danger incident to such exposed place, and if he fails to do so and injury results, he is precluded from the right of recovery.—*Tus. W. W. Co. v. Herrin,* 131 Ala. 81; *Woods' Case,* 100 Ala. 660; *Hill v. Bir. Ry. Co.,* 100 Ala. 447; *Underwood's Case,* 90 Ala. 49; *Rickett's v. Bir. St. Ry. Co.,* 85 Ala. 60; *Schaufler's Case,* 75 Ala. 136; *Worthington v. Central Ry. Co.,* 15 L. R. A. 326: *Foley v. R. R. Co., supra; McGann v. B. & E. Ry. Co.,* 18 L. R. A. (N. S.) 506; 3 Hutch. on Carriers, p. 1410; Moore on Carriers, pp. 660-629-850-860-1. On these authorities, it is insisted that the court erred in the charges given and refused and in the admissions of evidence.

HILL, HILL & WHITING, and JOHN V. SMITH, for appellee. When a train stops at a station a passenger may walk out onto the platform of the station, or across the platform into another car without losing their right of protection as a passenger.—*Watson v. E. T. V. & G.,* 92 Ala. 320; *Parons v. N. Y. C. & H.,* 113 N. Y. 365; *So. Ry. v. Smith,* 28 S. E. 178. No contributory negli-

gence was shown.—*Watkins v. B. R. & E. Co.*, 120 Ala.
147; *C. R. R. & B. Co. v. Miles*, 88 Ala. 261; *Johnson
v. Winona R. R. Co.*, 11 Minn. 296; *Langdon v. St. L.
J. M. & S. Co.*, 72 Mo. 392. On these authorities, it is
insisted that the court properly ruled upon the request-
ed charges, and upon the exceptions to evidence.

SIMPSON, J.—This action is by the appellee against
the appellant, for damages on account of a personal in-
jury received by the plaintiff while a passenger on de-
fendant's train. The complaint alleges that the "de-
fendant then and there so negligently conducted its said
business that, by reason thereof and as a proximate
consequence thereof, plaintiff received personal inju-
ries," in having his foot bruised and injured. The sec-
ond count describes the same injuries to his foot, and
alleges the same to be the result of "the negligence of
the defendant, or some agent, servant, or employee of
the defendant's, while acting within the scope or line of
his employment."

The plaintiff's testimony as to how the injury was
received is that he was a traveling salesman, a passen-
ger on defendant's train, with a ticket from Samson
to Dothan; that when the train reached Hartford, an
intermediate station, the conductor called out, "All out
for Hartford," and walked out of the train; that when
the train had stopped plaintiff walked out of the rear
coach, in which he had his seat, onto the platform, and
undertook to cross to the next coach, intending to look
out and see if he could discover a customer who lived
at Hartford; that, as he started to cross from the plat-
form of the rear coach to that of the one next in front,
the bumpers caught his foot; that the train remained
stationary for a while, and he heard no signal to move;
that he did not know how it was that his foot happened

[Central of Georgia Ry. Co. v. Storrs]

to get between the bumpers; that the bumpers were a little apart, and he presumed, when he was walking, he put his right foot across, and started to put the other, and his toe must have gotten in between the bumpers; that there was no shield over the bumpers; that he had traveled a good deal over well-regulated railroads in this and other states; that on other well-regulated railroads on which he had traveled the platforms are square, with a piece of steel across, so, when connected up, the cars fit close together; that the majority of them have a steel shield that plays back and forth over the motion of the cars"; that this train had no such shield; that he had traveled on this particular road a number of times before; that it was not a vestibuled train, and there was no vestibuled train on that line; that his foot was held between the bumpers for "just an instant"; that the train did not move off until after he had gone back into the car; that the space between the bumpers was six or eight inches; that it was broad, open daylight; that his eyesight was fairly good; that he had been accustomed to travel on trains such as this was; that the opening was in plain view; that the bumpers were the ordinary bumpers that hold one car to the other; that his attention had never been called specifically to bumpers arranged as these were, but he must have seen them, as he had traveled on that train before; that he was not clear, but supposed there must have been similar bumpers and platforms on other roads over which he had traveled; that he never examined or paid any particular attention to the bumpers on this train before, but must necessarily have seen them, because he had traveled on the same train, operated the same way; that he could not well have gone from one car to the other without seeing it; that he supposed his foot must have projected a little over the opening, and natural-

ly, his foot coming up, the toes went in between the bumpers, and they came together and caught it.

The plaintiff did not attempt to state how or why it was that the car moved so that the ends of the platform came together at that time; but the conductor, while he stated that he did not see the plaintiff get hurt, said also that the train was equipped with air brakes, and it is a hard matter to have the brakes all over the train working exactly alike, as sometimes the piston travel is longer; that on this occasion it may have been that the brakes were pulling a little harder on one car than on the other, and, if they were, when the brakes were released, one car would naturally roll up to the other car.

The general foreman of the shops of defendant testified that it was his duty to see that the engines and appliances to trains are in proper condition at each terminal; that the train in question was a standard passenger train, with automatic couplers; that it was in proper condition; that he had never seen a shield that crossed over from one car to the other; that the car in question had been in service for 15 years, and overhauled every year; that platforms have been improved since the car was built; that cars with such platforms had not been built within the last 5 years; that this platform was standard in construction, and the opening open to observation, so that any one could see it; that there is always "a buck motion, a surging back," before the engineer has released the brakes; that "that is sometimes done in bringing the train to a stop, when the brakes are not properly handled; that after the train comes to a full stop there is no movement. The engineer stated that the air brakes were working all right, and he managed them in the usual way in making the stop at Hartford (describing how it was done); that,

while the air brakes are constructed with the idea that in stopping the train they will work automatically on each car at the same time," yet it is impossible to adjust them so they will all work at the same second; that he first reduced the pressure on the brakes, so as to bring them to the wheels, and gradually increased the same, so as to avoid the jerking; that there was no movement after the train came to a stop; also that, if the brakes are properly constructed, when the train is brought to a stop, it will stay stopped.

Under this evidence the court could not say, as a matter of law, that there was no defect in the condition of the brakes which caused this surging of the car; the passenger had a right to go from one car to another when the train was stopped, and while, if the lack of a shield was a defect, yet that was open to the observation of the plaintiff, yet there is nothing to show that he had any information as to the tendency to "buck," or move up, under certain conditions, and it cannot be said that the danger of stepping from one platform to the other was apparent to him. Consequently the court was not in error in refusing to give the general charge in favor of the defendant.

The next insistence of the appellant is that the court erred in refusing to give charge 8, requested in writing by the appellant. There was no error in this refusal. The charge is misleading, tending to make the impression that the plaintiff had no right to pass from one car to another. When the conductor called, "Hartford," and the train had stopped, it was a notice to the passengers that the train would stop for the usual time, in order that passengers might get on and off, and while this was the primary purpose of the notice, yet during that interval passengers are at liberty to walk out of the car, onto the station platform, or over the

car platform into another car, still retaining their rights to protection as passengers.—2 Hutchinson on Carriers (3d Ed.) p. 1165, § 1012, and notes; *Southern R. Co. v. Smith,* 95 Va. 187, 28 S. E. 173.

From what has been heretofore said, and other reasons, there was no error in the refusal to give charges 4, 5, 6, and 7, requested by the defendant.

There was no error in the refusal to give charge 9, requested by the defendant. The plaintiff stated that he had been employed by M. & G. to travel, that being his fourth season; that he was earning $1,500 for six months' work, and was not able to continue work after the injury. There is no intimation that his salary was speculative, or that it was continued to him while he was not working. If such were the case, the defendant might have brought it out on cross-examination.

The objections to the questions as to how the platforms were arranged on other well-regulated railroads were properly overruled. The plaintiff had testified that he had traveled extensively over railroads, all over the United States (except the Pacific Slope), and specially over all the railroads of Alabama. He was competent to testify on this matter, and, if it had been desirable to have him distinguish between vestibuled trains and others, it could have been done by cross-examination.

There was no error in overruling the objection to the question to the witness Wagner, on cross-examination, as to whether any cars had been constructed, within the last five years, with platforms like those on the cars in question. Great latitude is allowed, on cross-examination, for the purpose of testing the accuracy and knowledge of the witness, and while it is true that the company was not obliged to adopt all improvements which had been made within five years, yet this was a circum-

[Alabama Central Railway Co. v. Humphries.]

stance proper to go to the jury, in considering whether the cars were properly equipped.

There was no error in overruling the motion for a new trial. As before stated, the matter of the condition of the equipment was for the jury to consider, and we cannot say that the preponderance of the evidence was so great against the verdict as to justify this court in reversing the decision of the trial court on that subject.

The judgment of the court is affirmed.

Affirmed.

DOWDELL, C. J., and McCLELLAN and MAYFIELD, JJ., concur.