# Bachelder *v.* Morgan.

*Automobile Collision.*

(Decided December 5, 1912. Rehearing denied February 13, 1913. 60 South. 815.)

1. *Automobile; Negligent Operation; Injury to Pedestrian.*—Under the evidence in this case it was a question for the jury whether defendant's automobile struck plaintiff while crossing the street and whether plaintiff's injuries were proximately caused by the negligence of the defendant in operating the said automobile.

2. *Same; Use of Streets; Care Required.*—A pedestrian crossing the street at a regular crossing is not, as a matter of law, guilty of negligence for failure to stop, look and listen for automobiles or other vehicles.

3. *Same.*—The evidence examined and held to authorize a finding that a pedestrian struck by an automobile while crossing a street was not guilty of contributory negligence.

4. *Same; Fright; Damages.*—Where a pedestrian crossing the street at a regular crossing fell and was injured in consequence of fright occasioned by the approach of an automobile, which did not touch him, the operator of the machine cannot be said to be liable for the accident.

5. *Witnesses; Leading Questions; Discretion.*—It is within the discretion of the trial court to allow or refuse to allow leading questions to be asked the witness.

6. *Evidence; Conclusion.*—While a witness is· entitled to give his best judgment or opinion on the matter inquired about, he should not be permitted to give an answer which is a mere guess.

7. *Appeal and Error; Harmless Error; Evidence.*—Where the witness is subsequently permitted to testify fully as to a fact the action of a trial court in previously refusing to permit such testimony is rendered harmless.

8. *Negligence; Evidence; Sufficiency.*—Where the evidence is in conflict and the jury is reasonably satisfied therefrom that plaintiff has established a cause of action as alleged, plaintiff is entitled to a verdict; hence, a charge asserting that if the jury, after considering all the evidence are left in doubt as to what was the proximate cause of the accident, plaintiff cannot recover, was properly refused.

9. *Damages; Measure; Donation By Third Persons.*—Where an employer stopped the payment of wages to an employee sustaining personal injuries in consequence of negligence of another person, but made a donation to the employee to aid him, the amount of such donation could not be used to reduce the damages for which such person was liable.

10. *Same; Excessive.*—The evidence in this case examined and it is held that a verdict for $6,000.00 cannot be said to be so excessive as to authorize a reversal of the action of the trial court in refusing to set it aside.

APPEAL from Mobile Law & Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by James W. Morgan against H. V. Bachelder. From a judgment for plaintiff, defendant appeals. Affirmed.

The substance of the complaint sufficiently appears. The pleas referred to are as follows:

(2a) "Plaintiff was guilty of contributory negligence, which proximately contributed to his injuries, in this: The plaintiff, at the time and place he claims to have been injured, was going west on the south side of St. Francis street, at the intersection with St. Joseph street, at a time when it was very dark and rainy, having over him his opened umbrella, turned in such a way as to obstruct his view, when by the use of ordi-

[Bachelder v. Morgan.]

nary care he could have averted the injury in looking ahead."

(3a) "Contributory negligence, in that defendant avers that, on the night when plaintiff alleges he was injured, defendant was coming south on St. Joseph street in his automobile, and stopped on the south side of the street railroad track, running along St. Francis street, the rear of his automobile being over the south rail of said street car track, in order for some pedestrians to pass, after which he started his machine off very slowly, and had not advanced but a few feet before plaintiff was seen in front of him, holloing, with his umbrella raised, at which time defendant stopped his machine; that it was very dark and rainy, and the lights of defendant's machine were lighted, and could be seen by a mere glance in the direction from which the automobile was approaching; and that plaintiff started off St. Joseph street, walking in front of defendants' automobile with his umbrella opened and raised over him, and turned in a direction to obstruct his view, so that he could not look out for or see approaching vehicles."

(4a) "Contributory negligence, in that plaintiff undertook to cross St. Joseph street, on the south side of St. Francis street, at the time and place he claims to have been injured, with his umbrella open and over him in such a way as to obstruct his view, and did not use ordinary or reasonable diligence or care in crossing said street, or else would not have come in contact with defendant's automobile."

(5) "Contributory negligence, in that plaintiff, at the time and place he claims to have been injured, walked right in front of defendant's slowly moving automobile."

[Bachelder v. Morgan.]

The demurrers to these pleas were that they were conclusions; that they failed to state facts sufficient to constitute contributory negligence; show no duty on plaintiff to act otherwise than he did; show no duty on the plaintiff to look up and down the streets for approaching automobiles; do not allege any facts to show that a reasonably prudent man would have been charged with notice that it was dangerous to cross said street at the time and place plaintiff attempted to cross it; and other grounds not necessary to be here set out.

The following are the assignments of error noted in the opinion:

(1) "The court erred in refusing to grant defendant's motion to require plaintiff to answer fully the question propounded to him as follows: 'Did you receive payment from your employers for the time you were away on account of your injuries? If so, what?' "

(5) "On cross-examination of plaintiff the following occurred: Defendant's counsel asked plaintiff this question: 'Were you, or not, paid anything by Pollock & Co., say, from August 12th to September 26th?' The answer was: 'I was paid.' Then this question: 'As a salary or otherwise? And the answer was: 'I don't understand you.' And this question was asked: 'Did, or not, Pollock & Co. pay you anything in the way of salary or otherwise for the time which you missed from your employment?' Objection was sustained to the last question."

(6) "The court erred in sustaining objection to the following question: 'You stated, in answer to your interrogatory propounded to you, that Mr. Pollock made a donation to you. What was that donation?' "

(7) "Objection to the following question: 'Was the donation made by virtue of your employment?' "

[Bachelder v. Morgan.]

(8) "Motion to rule out all of plaintiff's evidence after plaintiff had rested his case, which was refused."

(9) "Erred in refusing permission for defendant to take the stand in rebuttal of Gass' testimony, and then, after giving permission, limiting his examination to one question."

(10) "Refusing to grant defendant's motion to exclude all of plaintiff's evidence, after all the evidence had been introduced."

(11) "Refusing to give the following charge: Affimative charge, with hypothesis not to find for the plaintiff."

(12) "The following charge: 'I charge you, gentlemen of the jury, if, after considering all the evidence, your minds are left in doubt as to what was the proximate cause of the injury complained of, you cannot find for the plaintiff.'"

(13) "Refusing to give the following charge: 'I charge you, gentlemen of the jury, if you are reasonably satisfied from all the evidence that, at the time and place plaintiff was injured, it was very dark and rainy, and the plaintiff had open and over him an umbrella turned in such a way as to obstruct his view, you cannot find for the plaintiff.'"

INGE & ARMBRECHT and GOODWYN & MCINTYRE, for appellant. It is just as essential to a recovery to prove a negligent act or omission as it is to allege such specifically or generally in a complaint. It is insisted therefore that the court erred in refusing to rule out plaintiff's evidence on its conclusion and in refusing the same motion when all the evidence had been introduced and in refusing the general affirmative charge.— *Ala. C. C. & I. Co. v. Cowden,* 56 South. 987; 65 Atl. 780; 63 Atl. 237; 119 N. Y. Supp. 448; Huddy on Au-

tomobiles, sections 103-4. The statute does not apply and hence the negligence and consequent liability must be determined by the common law. It is doubtful if, under the ordinary definition of negligence, any negligence was shown in this case.—*A. C. G. & A. Ry. Co. v. Bullard,* 157 Ala. 623; 5 Words and Ph. 4744; *Barker v. Savage,* 45 N. Y. 191; 72 N. E. 1035; 110 N. Y. 1040; *McCormack v. Hesser,* 71 Atl. 55, and authorities supra. The defendant was guilty of contributory negligence in failing to stop, look and listen, and in the failure to use due care to observe the approaching vehicle.—*Adler v. Martin,* 59 South. 603; 177 N. Y. 529; 83 Appellate Div. 298; Thompson on Negligence, section 1328, and authorities supra. The 5th plea was proven.—*Corona C. & I. Co. v. White,* 158 Ala. 630. The plaintiff did not discharge his burden of proving negligence and the defendant did prove his first three special pleas.—*L. & N. R. R. Co. v. Pierce,* 142 Ala. 585; *Mouton v. L. & N. R. R. Co.,* 128 Ala. 546; *Mobile L. & Ry. Co. v. Hartwell,* 50 South. 884. One operating an automobile has equal rights with other vehicles and pedestrians on the highway and is held to no higher degree of care than they are.—*McDonald v. Montgomery St. Ry. Co.,* 110 Ala. 135; *B'ham Union Ry. Co. v. Hale,* 90 Ala. 11; 108 N. Y. App. Div. 128; 31 N. Y. Miscl. 583; 77 N. Y. Supp. 276. The compensation made by the employer demonstrates that no pecuniary loss resulted to plaintiff.—*M. & E. Ry. Co. v. Mallette,* 92 Ala. 213. The following authorities demonstrate that the court was in error in refusing to set aside the verdict for the reason that it was not sustained by the evidence and for the further reason that it was highly excessive: *So. Ry. v. Morgan,* 54 South. 627; *Shepard v. Dowling,* 103 Ala. 566, 567; *L. & N. Ry. Co. v. Lee,* 97 Ala. 325; *Central R. R. Co. v. Letch-*

[Bachelder v. Morgan.]

er, 69 Ala. 106; *Kaare v. T. S. & I. Co.*, 139 N. Y. 369; *Polsky v. N. Y. T. Co.*, 96 App. Div. 613; *McCarragher v. Proal*, 114 App. Div. 470; *Bologna v. Met. St. Ry.*, 64 N. Y. Supp. 559; *McManus v. Davitt*, 94 App. Div. 481; *Meddaugh v. Bigelow*, 67 Barb. 106; *Trotcky v. 42d, etc., R. R. Co.*, 77 Hun. 26; *Langlois v. Hayward*, 13 N. Y. Supp. 200; *Schmidt v. Brown*, 80 Hun. 183; *Pierce v. Metropolitan*, 21 App. Div. 427. General Acts 1911, page 588; *A. G. S. Ry. Co. v. Burgess*, 119 Ala. 555; *Barclay v. Puget Sound Lumber Co.*, 16 L. R. A. 140; *Gognon v. Klander Machine Co.*, 174 Federal (1909 U. S. C. C.) 6 Mayfield 674, note 19; *Richardson v. B'ham Cotton Mfg. Co.*, 116 Ala. 381. There was no negligence of defendant which was the proximate cause of the injury.—*Weatherly v. N. C. & St. L. Ry.*, 116 Ala. 577; *Bryant, Adm'r, v. So. Ry. Co.*, 137 Ala. 489; *Mayer v. Thompson Hutchison Co.*, 116 Ala. 635; Law of Negligence (Sheerman & Redfield) par. 26; *Downey v. Sawyer*, 157 (Mass.) 418; *Nolan v. Met. Ry. Co.*, 173 N. Y. 604; *Rea v. St. Louis Ry. Co.* (Tex.) 73 S. W. Rep. 555; Blacks Law and Pr. acc. cases p. 17; *Klackenbrink v. St. Louis Ry. Co.*, 81 Mo. App. 409; *Atchison Ry. v. Parry* (Kansas) 73 Pac. Rep. 105. In action for loss of salary, any evidence as to money paid by employer is admissible it being for the jury to say whether the payment was a salary or a donation and this is especially true on cross-examination. —*Seaboard Co. v. Woodson*, 98 Ala. 378; *Peake v. Stout*, 8 Ala. 647; *Gosden v. Williams*, 151 Ala. 592; *Fissure Mining Co. v. Old Susan Mine*, 63 Pac. 587; *Gasinger v. Lucas*, 132 N. W. Rep. 77; *State v. Harvey*, 106 N. W. Rep. 938.

GORDON & EDDINGTON, for appellee. The interrogatories were not introduced in evidence and no error

can be based thereon.—Section 4053, Code of 1907; *Barlow v. Hamilton,* 151 Ala. 234; *Reeves v. State,* 158 Ala. 5. A defendant can rely only on such acts of contributory negligence as he specially pleads and of course can introduce no evidence of other acts.—*Adler v. Martin,* 59 South. 597; *Haas' Case,* 153 Ala. 178. If the refusal to permit the questions set out in the third and fourth assignments was error it was harmless for the reason that subsequently the same facts were testified to fully.—*Williams v. Anniston E. & G. Co.,* 164 Ala. 4; *Granger's Case,* 162 Ala. 237. The same principle as governs insurance received by an injured party applies to a gift or donation.—*Long, et al. v. K. C. M. & B. R. R. Co.,* 170 Ala. 641; 6 Mayf. 252; section 3913, Code of 1907; 67 L. R. A. 37. In any event a donation cannot be regarded or considered in mitigation of damages.—Authorities supra and 1 Suther. on Dam. section 158. The question as to the sufficiency of the proof of negligence and as to proximately contributing negligence was one for the jury and the court properly submitted it to them.—*Adler v. Martin, supra; Mouton v. L. & N. R. R. Co.,* 128 Ala. 536; *Barber v. Shebor,* 58 South. 276. The court properly refused to give charge 5 requested by the defendant.—*Adler v. Martin, supra; T. C. I. & R. R. Co. v. Bridges,* 144 Ala. 238. The court properly declined to set aside the verdict because it was contrary to the evidence.—*Anderson v. English,* 121 Ala. 276. The verdict was not excessive.—*C. of G. Ry. Co. v. White,* 56 South. 574.

DE GRAFFENRIED, J.—In this case the plaintiff, James W. Morgan, claims that on the night of August 11, 1911, he was knocked down by an automobile, which was, at the time, owned and driven by the de-

fendant, H. V. Bachelder, and that he was thereby caused to suffer painful and serious injuries. The plaintiff further claims that his injuries were proximately caused by the negligent manner in which the defendant operated, ran or controlled the automobile on the occasion named, and this suit was brought by the plaintiff to recover the damages which he claims he suffered on that account.

The defendant pleaded to the plaintiff's complaint, in addition to the plea of the general issue, pleas 2a, 3a, 4a, and 5, which pleas the reporter will set out in his summary of the facts of this case, and upon the issues thus made the case was tried. There was a jury trial and a verdict for $6,000, and from the judgment pronounced upon the verdict the defendant appeals.

The plaintiff received his injuries in the city of Mobile, at the point where St. Francis street, which runs east and west, is intersected by St. Joseph street, which runs north and south. The building occupied by the People's Bank is situated on the south side of St. Francis street and on the east side of St. Joseph street. Bienville Square, a public square or park, is situated on the south side of St. Francis street and on the west side of St. Joseph street. St. Joseph street, at this particular point, is 46 feet wide from the sidewalk immediately west of the People's Bank building to the sidewalk on the east side of Bienville Square. The plaintiff received his injuries while crossing the street at a regular street crossing for pedestrians, and while he was in the act of going across from the People's Bank building to Bienville Square. He received his injuries about 8 o'clock at night, and it was raining at the time; but whether the rain was then falling heavily or lightly is in dispute. There seems to have been a cab stand on St. Joseph street immediately east of the side-

walk which lies east of Bienville Square, and the plaintiff claims that about the time he reached this cab stand, or at least when he was within from 6 to 8 feet of it, the defendant ran his automobile against him, knocking him down, dislocating one of his shoulders, fracturing one of its important bones, and inflicting bruises upon other parts of his body. The automobile was 12 feet 5 inches in length, and plaintiff testifies that after he was struck the automobile passed the point where he was struck about that distance.

The defendant, on the other hand, claims that he never struck the plaintiff at all. He claims that he had been to the Union Depot, and that when he reached the center of St. Francis street on his way south on St. Joseph street he saw a man and a woman leave Bienville Square and start east across the street to the People's Bank; that he stopped his automobile and waited for them to cross the street; that the point where he stopped the automobile was not over ten feet from the point where the plaintiff received his injuries; that when the man and the woman reached the sidewalk next to the People's Bank building he again started his automobile, and had only gone seven or eight feet when he heard the plaintiff scream; that he then looked, and saw the plaintiff not more than two or three feet in front of him; that he did not strike the plaintiff; that the plaintiff *fell* before the automobile reached him; that the automobile was traveling at a rate of speed not exceeding two miles per hour; and that he at once, upon hearing the plaintiff scream, stopped it.

While the defendant claims that it was raining heavily at the time—and this the plaintiff disputes—he testified that the lady to whom we have above referred had on a pink skirt, and if he could, when he claims to

have stopped his automobile and waited for her and her male companion to cross the street, distinguish the *color* of her dress, certainly there could have been nothing in the situation of the plaintiff which could have prevented the defendant, by the exercise of the precautions which the law reqiured of him, from seeing the plaintiff, who crossed the same street, or attempted to cross it, at the same time the defendant claims the man and woman crossed it.

While we have this phase of the case under discussion, it may be well for us to state that there is on St. Francis street a street car track, and that at the time the plaintiff left the sidewalk next to the People's Bank a street car, *going west,* was at or near the eastern edge of St. Joseph street. There is no doubt about the presence of the street car at or near the named point; for the plaintiff testifies that he saw the car as he started across the street, but further testifies that, as he was traveling in the same direction as the car and south of it, he knew he was in no danger from the car, and paid no further attention to it. The motorman of the street car claims that he stopped his car at the eastern edge of St. Joseph street, and that while his car was at a standstill an automobile stopped in front of him, with it rear wheels on the southern rail of the street car line, and remained there until he sounded his gong as a warning for it to move. This motorman also claims that when he sounded his gong two or three times the automobile moved forward down St. Joseph street in a southerly direction; that the automobile did not move very fast; and that it had not moved over eight or ten feet when he heard some one scream. Undoubtedly some one did scream just before the plaintiff received his injuries—the scream, in fact, was but a part of the occurrence—but just at this point there is

a sharp conflict, as we construe the testimony, between the plaintiff's testimony, on the one hand, and the testimony of the defendant and of the motorman, on the other. The testimony of the defendant, as we have already said, is that he was not going over two miles per hour when the plaintiff screamed; that he at once stopped his car before reaching the plaintiff; that he did not strike the plaintiff, but that the plaintiff fell before the car reached him; and that the plaintiff's fall, produced in no way by impact with the automobile, caused the plaintiff's injuries.

Says the defendant: "As this man [meaning the plaintiff] hollered, why, I looked that way, and saw him in front of the machine. I put my foot on the clutch to release the engine, and I put on the brake, and I stopped her. I couldn't have—I don't think I went over a foot after this man hollered. I saw him after he fell. He fell right directly in front of the machine, and when he did he was hollering, and he laid there and held up his hand and said: 'Stop! Stop! don't run over me.' "

On the other hand, the plaintiff testifies that when he made the above exclamation the automobile was almost upon him; that it immediately struck him, knocking him down and passing the point where he was struck about the length of the automobile, or about 12½ feet.

There is no contention or evidence that the defendant intentionally injured the plaintiff; and, as the defendant's evidence all tends to show that if, in fact, the plaintiff was knocked down by his car he, upon the discovery of the plaintiff, used all proper measures to bring his automobile to a standstill, then, if the car was stopped, *not* "within a *foot*" after the defendant discovered the plaintiff, but within *14* or *15 feet after*

such discovery, the car, *ex necessitate,* was traveling at a much greater rate of speed than the defendant testifies it was on the occasion named.

This conflict in the evidence as to the speed of the automobile at the time the plaintiff received his injuries, it seems clear, called in question the truth of the statement of the defendant and of the motorman that the defendant stopped his automobile as claimed by the defendant. The situation described by the plaintiff would more probably have existed as *he* describes it if the defendant's automobile, instead of stopping as defendant and the motorman claimed, had, with rapidity, shot across St. Francis street *ahead* of the street car and run into the plaintiff as the plaintiff was nearing the sidewalk on the east side of Bienville Square; or if the automobile, instead of being on St. Joseph street, was in fact traveling west on St. Francis street and, upon reaching St. Joseph street, had been suddenly turned by the defendant around the corner at the people's Bank into St. Joseph street. At any rate, we think that the question as to whether or not the automobile in fact stopped, and whether it was proceeding slowly or rapidly when the plaintiff received his injuries, was one for the jury. If the defendant's version of this matter is true, then the plaintiff simply fell on account of the excitement or fright which he suffered because of his sudden discovery of defendant's slowly moving automobile in close proximity to him. If, on the other hand, the plaintiff's version is true, then he was knocked down by defendant's automobile when it was moving much more rapidly than the defendant would have the court to believe.

We are therefore of the opinion that the *speed* of the automobile, and whether it stopped on the occasion named, were matters, under the evidence, for the deter-

mination of the jury. If, from mere fright or excitement, the plaintiff fell and was not touched, as the defendant contends, then the defendant was not liable. If, on the other hand, the plaintiff was knocked down by the automobile, as claimed by the plaintiff, then the question as to whether the plaintiff's injuries were proximately occasioned by the negligence of the defendant was a question for the jury.

The plaintiff, when he received his injuries, was crossing the street at a regular street crossing for pedestrians; and we find nothing in the disputed state of the facts which takes this case out of the operation of the general rule that negligence is not imputed, as a matter of law, to persons crossing a street at a regular crossing for pedestrians without stopping, looking, and listening for automobiles or other vehicles.—*Adler v. Martin,* 179 Ala. 97, 59 South. 597.

(1) The evidence was in dispute as to how the plaintiff held his umbrella on the occasion of the injury. His evidence tended to show that he held it in the ordinary way, above his head, and in such a way as not to obstruct his view. The evidence, or the circumstances which some of the evidence tended to establish, was also in dispute as to the speed of the automobile at the time referred to; and the jury, if they believed the account of the matter as given by the defendant and the motorman, had a right to infer that the automobile was *not* moving *slowly,* but rapidly, when the plaintiff was struck by it, if, in fact, he was struck by it.

There was therefore evidence in the case from which the jury, as the sole judges of the evidence, had a right to find that the defendant failed to establish any of his special pleas. An inspection of the pleas will demonstrate the truth of this proposition.

[Bachelder v. Morgan.]

(3) It has been frequently determined that it is within the discretion of the trial judge to permit a leading question to be put to a witness. It is also an undoubted rule that, while a witness may, at times be permitted to give his best judgment or opinion as to a matter of inquiry, he can never be permitted to give an answer which is a mere guess. It is also true that when a trial court at one stage of the proceedings refuses to allow a witness to testify to a certain fact, but afterwards the witness is permitted to testify to that identical fact, the action of the court as to such a matter will not be reviewed. These considerations dispose, adversely to appellant, of the second, third, and fourth assignments of error.

(4) It appears from the evidence that the plaintiff, at the time he was injured, was in the employ of J. Pollock & Co., and was being paid a salary of $150 per month. The plaintiff further testified—and there was no evidence tending to dispute his testimony on that point—that while he was, owing to his injuries, unfit to work J. Pollock & Co. stopped payment of his salary, and that during that time he received no salary from his said employers. The plaintiff further testified that while he was out of employment his employers, as a matter of grace and as an act of kindness, made a donation to the plaintiff. There was no evidence tending to cast a doubt upon this part of the testimony of the plaintiff and, if true, the donation was, of course, made by the plaintiff's employers to aid him in the period of his distress and disability. This donation was a matter with which the defendant had no concern. The amount or fact of the donation had no tendency to minimize the amount of the plaintiff's damages, if he was entitled to any damages; and the court properly refused to require the plaintiff to state the amount of such do-

nation.—*Long et al. v. Kansas City, M. & B. R. Co.*, 170 Ala. 641, 54 South. 62; *Nashville, C. & St. L. Ry. v. Miller*, 120 Ga. 453, 47 S. E. 959, 67 L. R. A. 87, 1 Ann. Cas. 210, and authorities cited in note 1. The above disposes of the first, fifth, sixth, and seventh assignments of error.

(5) We have already indicated that, in our opinion, the question as to whether the plaintiff's injuries were proximately caused by the defendant's negligence was a question, under the evidence, for the jury. We have also stated that, in our opinion, the question as to whether the defendant established any of his special pleas was also a question for the jury. The appellant, therefore, is entitled to nothing on account of his eighth, ninth, tenth, and eleventh assignments of error.

(6) Whenever there is a material conflict among credible witnesses as to whether a certain event occurred in a particular way, then there must necessarily exist *some* doubt as to how the event *did* occur. Even in criminal cases the law does not require that the guilt of the defendant shall be shown by the evidence beyond all doubt, but only beyond a reasonable doubt. In the present case the jury may have, after considering all the evidence, entertained *some* doubt as to what was the proximate cause of the plaintiff's injuries; but they may have been reasonably satisfied that the plaintiff was entitled to recover. For this reason the trial court did not commit error in refusing the written charge made the basis of the twelfth assignment of error.

(7) Under the evidence in this case, a short summary of which has already been given in this opinion, the trial court properly refused to give to the jury the written charge made the basis of the thirteenth assignment of error.

(8) We have already stated that, in our opinion, the question as to whether, under the evidence, the plaintiff was enittled to recover was not a question of law for the court, but was a question for the jury. This being true, it was, of course, for the jury, if they came to the conclusion that the plaintiff was entitled to a verdict in his behalf, to fix the amount of his damages. In addition to the loss of time and physical pain suffered by the plaintiff, and in addition to the medical and other bills. which he was required to pay, the plaintiff also suffered a permanent injury to his shoulder, which has resulted in a permanent impairment of the full use of his right arm. The medical authorities who testified at the trial were of the opinion that this arm may, by another painful and, possibly, dangerous operation, be restored to its former usefulness; but the shoulder is shrunken, and a bone, the size of "an orange or lemon cut in half," has been, on account of the injuries received by the plaintiff, removed from the plaintiff's shoulder. To use the language of one of the attending surgeons: "The bone of the arm fits into a socket. The head of the bone that fits into the socket was broken off"—and this part of the bone was taken out. "It leaves the bone in the socket without the head; the head is gone. The effect it has upon the use of the arm is to impede its use, interfere with its use."

The verdict in this case was for $6,000. We cannot hold that the amount was so excessive as to authorize this court to reverse the action of the trial court in refusing to set it aside on that account. Neither are we of the opinion that, on any other ground, this court should disturb the ruling of the trial court upon the appellant's motion for a new trial.—*Cobb v. Malone & Collins*, 92 Ala. 630, 9 South. 738; *Central of Georgia Railway Co. v. White*, 175 Ala. 60, 56 South. 574. There is

no error in the record. Let the judgment of the court below be affirmed.

Affirmed. All the Justices concur.

