Defendants Harley-Davidson, Inc., and AMF, Inc. appeal from a $1,000,000 judgment based on a jury verdict obtained against them in Mobile County Circuit Court by plaintiff Bobby Dale Toomey. (Because their interests and arguments are identical, these two defendants shall be referred to simply as "Harley-Davidson" or "the defendant.") Toomey sued under the Alabama Extended Manufacturer's Liability Doctrine, claiming defective design of a Harley-Davidson motorcycle helmet. We affirm.
Bobby Toomey purchased a Harley-Davidson 1200 motorcycle and the "full face" X-100 helmet at issue in October 1980 from Rennie Thomas, who had purchased both the motorcycle and the helmet from the Harley-Davidson dealer in Mobile in September 1977. Toomey had owned three motorcycles prior to this one, but had never used a "full face" helmet, which covers the entire head from the chin up. On November 4, 1980, Toomey's wife purchased a "flip-up" face shield for her husband from the Mobile Harley-Davidson dealer. This particular shield has two snaps at the top and two at the bottom.
On November 7, 1980, Toomey was riding his motorcycle to work and was wearing this helmet, with all four snaps fastened. Toomey testified that, although it was a clear morning, his face shield suddenly clouded totally with condensation, completely obscuring his vision. He testified, "It was just like milk went in front of the mask; I couldn't even see at all." At a point where Toomey was entering a sharp curve, he lost control of his motorcycle, entering the left lane and hitting an oncoming automobile. As a result of the collision, Toomey's left elbow was shattered *Page 973 
and his right foot severed. His right leg was later surgically amputated below the knee. In his complaint, Toomey claimed that the helmet lacked ventilation to prevent interior fogging and that it was not hinged so as to allow the user to quickly flip it up in the event visibility became inhibited.
Harley-Davidson raises several issues on appeal, specifically: 1) Whether the trial court erred in denying defendant's motion for mistrial based on a remark by plaintiff's counsel in his opening statement; 2) Whether the trial court erred in allowing plaintiff's expert to testify regarding the helmet's design (the defendant contends the testimony invaded the province of the jury and involved a matter of common knowledge); 3) Whether the trial court erred in denying the defendant's motion for directed verdict or judgment notwithstanding the verdict (defendant argues three grounds on which it says the motion should have been granted: that there was not a scintilla of evidence that the helmet and face shield were defective and unreasonably dangerous to expected users; that the plaintiff was contributorily negligent; and that the plaintiff had no loss of earnings because he continued to receive his salary from the date of the accident until the date of trial); and 4) Whether the trial court erred in denying the remittitur defendant requested.
 I
The complained-of comment by plaintiff's counsel occurred during his rebuttal opening statement when he told the jury, "We'll show you that if this helmet is so safe, and if this — really a hinge type helmet — that if it's really a hinged helmet, why do they no longer sell this helmet?" Defense counsel objected and the trial judge stated, "We are just doing this case now and nothing else. That's the only matter that is before the jury and the Court — this particular helmet." The record does not indicate a ruling by the trial judge on the objection, nor did defense counsel request a curative instruction. "Much must be left, in the matter of an attorney's argument and statements, to the enlightened judgment of the trial court, with presumptions in favor of its rulings. To justify a reversal, we must conclude that substantial prejudice has resulted." Louisville N.R.R. v. Wade, 280 Ala. 453, 456,195 So.2d 101, 103 (1967). We do not find the remark by plaintiff's counsel to be so egregious that it could not have been corrected by curative instructions. Moreover, the fact that defense counsel failed to request a ruling on his objection or an instruction from the court prevents him from now asserting error in the court's denial of a mistrial. "Without a request from appellant for further action by the court, there can be no review of the court's failure to so act." Roan v. Smith, 272 Ala. 538, 544, 133 So.2d 224, 229
(1961). "A party who invokes no further action by the court, thereby indicating his satisfaction, cannot complain of the court's failure to do what [it] was not asked to do." C.C.Hooper Cafe Co. v. Henderson, 223 Ala. 579, 137 So. 419, 422
(1931).
 II
Bobby Toomey called as a witness George Greene, a consulting engineer, who testified that in his expert opinion the helmet and face shield as designed, manufactured, and sold were defective because they did not provide ventilation to prevent fogging and did not have a means of removing the face shield if it became fogged. Harley-Davidson claims this expert testimony was unnecessary and improper because it concerns a matter not so far removed from ordinary human experience that a jury will not possess the skill or knowledge requisite to draw a proper inference from the facts. Wal-Mart Stores v. White,476 So.2d 614, 617 (Ala. 1985). Greene testified that one of the specific goals of design and safety engineering is to identify hazards and eliminate them by design rather than guard against them with warnings. He also stated that fogging in helmets is a well-known occurrence and that Harley-Davidson was aware of it, because it also manufactured non-fogging face shields during the same time Toomey's full-face shield was made. He further testified that as early as 1975 it *Page 974 
was within the state of the art to design a full-face helmet that had an easily flipped up face shield and had ventilation to prevent fogging. These are not facts necessarily within the common knowledge of an ordinary jury.
 "The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse. . . .
 "Generally before expert testimony is admissible, it should appear the jurors themselves are incapable, for want of knowledge or experience of the subject matter, of drawing correct conclusions from the facts proved."
Maslankowski v. Beam, 288 Ala. 254, 264, 259 So.2d 804, 813
(1972).
In this instance, we find that Greene's testimony was "essential to produce evidence from which lay jurors [might] reasonably infer that the defective condition of the product [was] the cause of the product's failure and plaintiff's resultant injury." Sears, Roebuck Co. v. Haven Hills Farm,395 So.2d 991, 995 (Ala. 1981).
 III
We agree with the trial judge's determination that there was a scintilla of evidence that the helmet and shield were defective as designed. When asked for the basis of his opinion that the helmet was defective, Greene replied:
 "Because the face shield is extremely difficult to remove, it cannot be removed quickly with one hand, and because fogging is a problem that is well known. You know, there are many other ways you could obscure your vision, . . . even besides fogging, but you have to able to get that shield off there quickly, sir."
Toomey testified that he attempted to raise the face shield but was unable to do so. The only eyewitness to the accident, Judith Coleman, whose automobile Toomey hit, testified that just before the collision, she saw Toomey, in a quick motion, try to get the shield up, but to no avail. She also testified that, immediately after the accident when she approached Toomey, as he lay in the middle of the road, he told her that it was not her fault, that his shield had fogged up.
"Defective" is defined as "not meet[ing] the reasonable expectations of an ordinary consumer as to its safety," and a product is in a defective condition when "at the time the product leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer." Sears, Roebuck Co. v.Haven Hills Farm, 395 So.2d at 994, quoting Casrell v. AltecIndustries, Inc., 335 So.2d 128, 133 (Ala. 1976). Reviewing the record, we find it apparent that there was at the very least a scintilla of evidence to support a finding that the helmet was defective.
Harley-Davidson claims that Toomey did not sufficiently acquaint himself with the helmet before he wore it on the day of the collision and that his accident was a result of his own inability to properly use it. The trial judge, in denying Harley-Davidson's motion for a directed verdict and motion for judgment notwithstanding the verdict, held that the evidence did not show that Toomey was contributorily negligent as a matter of law. In his order he stated that "there was clear and convincing evidence that the products sold and distributed by defendants in this case were defective and unreasonably dangerous when put to their intended uses and that these defects proximately caused the plaintiff's injuries and damages." Although stated in conclusory terms, this language in the trial court's order denying the defendant's motion for a JNOV says, in effect, that the evidence made out a triable issue of fact for resolution by the jury. We agree.
The testimony at trial reflects that Toomey was wearing the helmet properly with all four snaps fastened; there is no evidence that he failed to exercise reasonable care in wearing the helmet. Brown v. Piggly-Wiggly Stores, 454 So.2d 1370 (Ala. 1984). "Upon raising the affirmative defense of contributory negligence, defendant has the burden of proving that (1) plaintiff failed to use due care for his own, *Page 975 
or . . . his property's, safety, and (2) that such a failure was a proximate cause of the injury." American FurnitureGalleries, Inc. v. McWane, Inc., 477 So.2d 369, 372 (Ala. 1985). (Citations omitted.) The trial judge's rejection of this ground as a basis for directed verdict or JNOV and his submission of the contributory negligence issue to the jury were correct.
The trial judge was also correct in allowing evidence as to Toomey's loss of earnings. Harley-Davidson argues that this was improper because he continued to receive his salary from the time of the accident until the time of trial. Before the accident, Toomey worked for his father at Toomey Equipment Company, where he was a mechanic. Toomey returned to work in October 1981, but the most he did was answer the telephone and sit around the shop two or three hours a day. Toomey testified that he did not do any real work for his father and that he did not consider the money he received as money earned. Toomey argues that the continuation of his salary constituted a gift from his father and was not tantamount to a "payment of wages earned."
The general rule in Alabama is that receipt of a salary by an injured employee from his employer precludes recovery of lost wages against a third party. Montgomery E.R. Ry. v. Mallette,92 Ala. 209, 9 So. 363 (1890); Central of Georgia Ry. v.Storrs, 169 Ala. 361, 53 So. 746 (1910); Travis v. L. N.R.R.,183 Ala. 415, 62 So. 851 (1913); Mackintosh Co. v. Wells,218 Ala. 260, 118 So. 276 (1928); Whiddon v. Malone, 220 Ala. 220,124 So. 516 (1929). However, this rule does not extend to outright gifts or donations by an employer. Bachelder v.Morgan, 179 Ala. 339, 60 So. 815 (1912).
Bachelder involved a plaintiff who, during the time he was "unfit to work," received no salary; nevertheless his employers, "as a matter of grace and as an act of kindness, made a donation to the plaintiff. . . . [T]he donation was, of course, made by the plaintiff's employers to aid him in the period of his distress and disability. This donation was a matter with which the defendant had no concern. The amount or fact of the donation had no tendency to minimize the amount of the plaintiff's damages, if he was entitled to any damages."Bachelder v. Morgan, 179 Ala. at 353, 60 So. at 819.
In ruling on plaintiff's motion in limine to preclude any reference by the defendant to the fact that Toomey's salary was continued during his convalescence, the trial judge stated that it was for the jury to determine whether the payments constituted a gift or wages. The trial judge charged the jury on the issue of lost wages, without objection from defendants:
 "The plaintiff also claims damages for loss of earnings, and you've heard the evidence regarding that and the arguments of counsel. In determining the amount of damages for loss of earnings, you should consider any evidence of the plaintiff's earning capacity, his earnings, the manner in which he ordinarily occupied his time before the injury, his inability to pursue his occupation, and determine what he was reasonably certain to have earned during the time so lost had he not been disabled."
Because the issue of the precise nature of the money Toomey received was one of fact, it was properly before the jury.
 IV
Finally, the trial judge's order denying the motion for new trial recited his reasons for denying remittitur, as required by Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986):
 "The plaintiff, Bobby Dale Toomey, was twenty-three years old at the time of the accident and was gainfully employed by his father as a tractor and heavy equipment mechanic at Toomey Tractor Company in Mobile County. As a direct result of this injury, Bobby Toomey suffered a leg amputation, rendering him permanently impaired for the rest of his life. Although Mr. Toomey has been fitted with a prosthetic device, his gait, ability to walk, run, work, and enjoy life have obviously been permanently restricted and impaired. In the Court's *Page 976 
opinion, the plaintiff was a very credible witness. Moreover, having heard all of the evidence and personally observed Mr. Toomey, it is apparent to this Court that Mr. Toomey suffered severe physical pain at the time of his amputation and that he has suffered pain from the accident to the present time. He will also suffer physical pain for the rest of his life. Additionally, Mr. Toomey has suffered great mental anguish and emotional distress as a result of his amputation and will undoubtedly suffer emotionally for the rest of his life as a direct result of the loss of his limb. The Court further finds from the evidence that Mr. Toomey suffered a severe injury to his left elbow area as a result of this occurrence, which also caused him to undergo significant medical care and treatment and which has caused and will continue to cause substantial physical and mental pain and anguish to Mr. Toomey.
 "After having observed the demeanor and credibility of all witnesses for plaintiff and defendants, this Court cannot find that the jury verdict of one million dollars ($1,000,000.00) for Bobby Dale Toomey was the result of passion, prejudice, corruption, or any other improper motive. To the contrary, this Court finds that there was clear and convincing evidence of liability, pursuant to the Court's oral charge to the jury on the appropriate Alabama law to be followed concerning products liability and damages. The Court further notes that defendant's counsel made no objections whatsoever to the Court's oral charge. It is this Court's considered opinion that the jury's monetary verdict was clearly supported by the evidence of plaintiff's damages and injuries, as properly presented at trial."
As the Hammond court stated, "the trial judge is better positioned to decide whether the verdict is . . . flawed. He has the advantage of observing all of the parties to the trial — plaintiff and defendant and their respective attorneys, as well as the jury and its reaction to all of the others." 493 So.2d at 1378, 1379. Nowhere does defendant allege that the verdict was based upon bias, passion, corruption, or other improper motive. Reviewing the evidence presented, we do not find the amount awarded excessive, and we affirm the trial judge's ruling.
AFFIRMED.
MADDOX, JONES, SHORES, ADAMS and STEAGALL, JJ., concur.