646 So.2d 564 (1994)
GENERAL MOTORS CORPORATION
v.
Pamela L. SAINT.
1920328.
Supreme Court of Alabama.
August 12, 1994.
*565 David M. Heilbron and Richard B. Ulmer, Jr. of McCutchen, Doyle, Brown & Enersen, San Francisco, CA, Warren B. Lightfoot, Jere F. White, Jr. and Lee M. Hollis of Lightfoot, Franklin, White & Lucas, Birmingham, Lanny B. Bridgers and Andrew T. Bayman of King & Spalding, Atlanta, GA, for appellant.
David H. Marsh of Pittman, Hooks, Marsh, Dutton & Hollis, P.C., Birmingham, William H. Atkinson of Fite, Davis & Atkinson, John H. Bentley, Hamilton, for appellee.
STEAGALL, Justice.
On October 30, 1986, Pamela Saint received severe, permanent brain injuries when the 1984 Chevrolet Celebrity automobile she was driving hit a low shoulder on a two-lane road in Marion County, veered out of control, and hit a tree. Ms. Saint and her husband sued General Motors Corporation ("GM") under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), claiming that her car was not crashworthy because, they alleged, its seat belt assembly failed to protect Ms. Saint adequately from enhanced injuries she sustained in the accident. Specifically, they claimed that the seat belt's "comfort feature," which GM had designed and had begun putting in its cars in 1976, allowed extensive slack to develop and, as a result, caused the seat belt not to properly restrain the occupant. The jury returned a verdict in favor of Pamela Saint and awarded her $13,000,000; it returned a verdict for GM on her husband's loss of consortium claim.
Although GM raises 17 issues on appeal, we will address only the issue whether the trial court erred in refusing to charge the jury on contributory negligence. We reverse because of error in that regard. Ms. Saint contends that, based on Dennis v. American Honda Motor Co., 585 So.2d 1336 (Ala.1991), "[t]raditional contributory negligence is not a defense in an AEMLD action" and that "only the `product misuse' form of contributory negligence is an allowable defense." This is not, however, a Dennis v. American Honda Motor Co. situation, nor was that this Court's holding in Dennis.
In Dennis, Honda alleged that Dennis had been contributorily negligent in causing the accident, not that he had been negligent in wearing the helmet he claimed was defective. The trial judge charged the jury on contributory negligence with regard to accident causation. This Court reversed the judgment based on the verdict in favor of Honda and held that a plaintiff's negligence in causing an accident is not a bar to an AEMLD action. 585 So.2d at 1342. This Court did not hold that a plaintiff's contributory *566 negligence relating to the defective product is no longer a defense in product liability cases. See Williams v. Delta International Machinery Corp., 619 So.2d 1330 (Ala.1993), for an explanation of the holding in Dennis.
The situation here is just the reverse of that in Dennis. GM maintains that Ms. Saint was not wearing her seat belt or, in the alternative, that she put the slack in her seat belt. Whether Ms. Saint was, in fact, wearing her seat belt was hotly contested at trial, with testimony from each side supporting its position. One of Ms. Saint's witnesses, Voyd Lolley, an ambulance attendant, stated in his deposition that the shoulder belt was over Ms. Saint's left shoulder and that he cut it to get her out of the car. At trial, however, Lolley stated that the shoulder belt was around Ms. Saint's waist when he arrived at the scene.
Another of Ms. Saint's witnesses, John Harcourt, a metallurgist, said that the shoulder belt could not have been across Saint's left shoulder; he said he held that opinion because of the position she was in immediately after the wreck. In addition, Harcourt testified that Ms. Saint had put in the slack that was in her belt:
"Q. And it is your belief or opinion that there was some slack in her lap belt?
"A. Yes.
"Q. But that would have been put in there by her; would it not?
"A. Yes.
"Q. In other words, when she started out you are saying she would have put slack in the belt because somehow she would have had trouble latching it without putting slack in it?
"A. You can't latch it without slack.
"Q. Now
"A. You can't. I can't. No one can.
"Q. But I want to make it clear so the jury doesn't get the impression that somehow that slack starts working its way into the belt. That can't happen; can it?
"A. No. It is
"Q. In fact, that is why the cinching latchplate is there, is to keep slack from getting in the lap belt after you, after you buckle it?
"A. That may be a possibility, yes.
"Q. All right. In other words, if you had a sliding latchplate, then arguably the belt could slide between the shoulder and
"A. Right. Because of the tension relief device it can allow so much excessive slack in the shoulder that if you had a slipping it would come down to the lap portion also.
"Q. But you are not sayingIn other words, you are not saying that happened? You are saying whatever slack there is in the lap belt had to be put in there when she put it on?
"A. Yes, when she don[ned] the belt.
"....
"Q. Okay. When she put it on, then you say she hadNow you say she had six inches of slack?
"A. That is what was illustrated on the model. I say four or more inches.
"Q. Well, I thought you told this jury this morning or yesterday that you thought, you were of the opinion she had six inches of slack. I wrote that down.
"A. Yes, sir.
"Q. And which is it?
"A. They are both consistent, four or more and six. I said six because of at the time of the deposition I said four or more. After actually demonstrating with the model I think it is closer to six."
The testimony at trial established that slack in the lap belt is removed by pulling up on the shoulder belt. Once the belt is buckled and the slack is gone, no more slack can develop. The owner's manual for the Chevrolet Celebrity explains how to eliminate the slack and explicitly states that the belt should fit snugly for safety purposes:
"SEAT BELT SYSTEMS
"CAUTION: To help reduce the risk of personal injury in collisions or sudden maneuvers use the seat belts following *567 the instructions in this section on their proper use, maintenance, and application with child restraint systems. This includes pregnant women; pregnant women should select a seat with a lap-shoulder belt whenever possible.
"....
"To reduce the risk of sliding under the belt during a collision, position the belt across your lap as LOW ON YOUR HIPS as possible and adjust it to a SNUG FIT by pulling the `shoulder' portion upward through the latch plate.
"....
"Keep any shoulder belt slack to a minimum. Too much belt slack could reduce the amount of protection in an accident because the belt is too loose to restrain you properly."
(Emphasis original.)
GM requested the following instructions on contributory negligence:
"DEFENDANT'S REQUEST TO CHARGE NO. 22

"I charge you, Ladies and Gentlemen of the Jury, that the defendant has also interposed a defense of contributory negligence in the use [of the seat belt] installed on the 1984 Chevrolet Celebrity. By that, defendant claims that at the time and place specified the plaintiff Pamela Saint herself was negligent in the operation or use of the seat belt system installed on the 1984 Chevrolet Celebrity, and that the plaintiff Pamela Saint's own negligent use or misuse proximately caused or proximately contributed to cause plaintiff Pamela Saint's injuries.
"If you are reasonably satisfied from the evidence that the plaintiffs have proven all the elements of their claim as I have previously outlined them to you, and that plaintiff Pamela Saint was not guilty of contributory negligence in the use of the seat belt system on the 1984 Chevrolet Celebrity as claimed by the defendant, then your verdict will be for the plaintiffs.
"If, however, you are reasonably satisfied from the evidence that plaintiff Pamela Saint was guilty of contributory negligence in the use of the seat belt system in the 1984 Chevrolet Celebrity as claimed by the defendant, then your verdict must be for the defendant."
"DEFENDANT'S REQUEST TO CHARGE NO. 23

"I charge you, Ladies and Gentlemen of the Jury, that if you are reasonably satisfied from the evidence that plaintiff Pamela Saint failed to use reasonable care in the use of the seat belt restraint system on the subject 1984 Chevrolet Celebrity or misused the seat belt restraint system at the time and place of the accident at issue, and if you are further reasonably satisfied that her failure to use reasonable care contributed to cause the injuries in question to any degree, then your verdict must be for the defendant."
"DEFENDANT'S REQUEST TO CHARGE NO. 24

"I charge you, Ladies and Gentlemen of the Jury, that contributory negligence is negligence on the part of the plaintiff Pamela Saint which proximately contributed to the alleged injury. The defendant has raised contributory negligence as an affirmative defense; therefore, the burden is upon the defendant to reasonably satisfy you from the evidence as to the truth of the material allegations of this defense. If you are reasonably satisfied from the evidence that plaintiff Pamela Saint was contributorily negligent in using the seat belt restraint system in the subject 1984 Chevrolet Celebrity, plaintiffs cannot recover, and your verdict should be for the defendant."
Ms. Saint argues that the charge the trial judge gave on product misuse was sufficient without the court's giving these requested chargesthat, essentially, a charge on product misuse is a charge on contributory negligence. This is not a correct statement of the law with regard to defenses under the AEMLD, because the theories behind product misuse and contributory negligence *568 are distinct from one another, rather than synonymous.
In Hammond v. McDonough Power Equipment, Inc., 436 So.2d 842 (Ala.1983), this Court held that the trial judge correctly submitted to the jury the issues of the plaintiff's alleged contributory negligence, assumption of the risk, and misuse of the product. A plaintiff misuses a product when he or she uses it in a manner not intended or foreseen by the manufacturer. Kelly v. M. Trigg Enterprises, Inc., 605 So.2d 1185 (Ala. 1992). A plaintiff is contributorily negligent in handling a defective product when he or she fails to use reasonable care with regard to that product. Williams v. Delta International Machinery Corp., supra; Harley-Davidson, Inc. v. Toomey, 521 So.2d 971 (Ala.1988). See, also, Edward C. Martin, "Alabama's Extended Manufacturer's Liability Doctrine (AEMLD)," 13 Am.J.Trial Advoc. 983 (1990) (cited with approval in Kelly v. M. Trigg Enterprises, Inc., supra) and D. Alan Thomas and Nancy S. Akel, "Products Liability and Contributory Negligence in the Wake of Williams v. Delta International Machinery Corp.," 54 Alabama Lawyer 261 (1993), for discussions of the differences between the two defenses.
There was evidence from Ms. Saint's own expert that she allowed slack to remain in her seat belt. GM clearly foresaw the danger that would result from someone's doing so and warned against it in its owner's manual. From that evidence, a jury could find that, although Ms. Saint did not use her seat belt in an unintended or unforeseen manner, she nonetheless was negligentthat is, that she failed to use reasonable carein wearing it. GM was entitled to a jury charge on contributory negligence, and the trial court erred in not giving such a charge.
The judgment based on the jury's verdict in favor of Ms. Saint is, therefore, reversed, and the cause is remanded.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES and HOUSTON, JJ., concur.
HORNSBY, C.J., and KENNEDY, INGRAM and COOK, JJ., dissent.
HORNSBY, Chief Justice (dissenting).
I dissent, because I believe that product misuse is the only relevant defense relating to the plaintiff's negligence in an AEMLD action. This Court has recognized that concept several times. In Savage Industries, Inc. v. Duke, 598 So.2d 856, 859 (Ala.1992) (citing Dennis v. American Honda Motor Co., 585 So.2d 1336, 1342 (Ala.1991)), this Court stated that the only relevant defenses in an AEMLD action are "[l]ack of causal relation, product misuse, and assumption of risk." Thus, these are the only appropriate defenses in an AEMLD action, and contributory negligence is not applicable.
Further, I dissent for the reasons stated in my dissent in Williams v. Delta International Machinery Corp., 619 So.2d 1330 (Ala. 1993). Contributory negligence is a harsh defense to a negligence claim, and it has been abandoned by the great majority of American jurisdictions. In an AEMLD action, where the defendant manufacturer has a duty to place a safe product on the market and its "failure to do so constitutes negligence as a matter of law," the defense of contributory negligence has even greater potential for injustice. Casrell v. Altec Industries, Inc., 335 So.2d 128, 132 (Ala.1976); Atkins v. American Motors Corp., 335 So.2d 134, 140 (Ala.1976). This Court adopted the AEMLD in order to further a manufacturer's duty to provide safe products to our citizens. However, recognizing the plaintiff's negligence as a complete bar to recovery for injury caused by the defective product directly opposes the policy behind the AEMLD.
In addition to frustrating the policy behind the AEMLD, the preservation of the contributory negligence defense keeps Alabama out of line with the vast majority of jurisdictions. "[A]lmost every common law jurisdiction in the world and 46 American states have replaced the outmoded doctrine of contributory negligence with some form of the doctrine of comparative negligence." Williams v. Delta International Machinery Corp., 619 So.2d 1330, 1334 (Hornsby, C.J., dissenting). Further, the District of Columbia and Maryland, two of the few remaining jurisdictions that retain contributory negligence as a complete *569 defense in ordinary negligence cases, do not apply that doctrine in products liability cases. Payne v. Soft Sheen Prod., Inc., 486 A.2d 712 (D.C.App.1985); Anthony Pools, Inc. v. Sheehan, 295 Md. 285, 455 A.2d 434 (1983). Accordingly, I believe that this Court should simply eliminate the defense of contributory negligence in AEMLD actions, or, alternatively, replace it with a comparative negligence standard in AEMLD actions. Doing so would properly promote the policy behind the AEMLD and would bring our jurisprudence into the mainstream of American law recognized by the overwhelming majority of jurisdictions.
INGRAM, Justice (dissenting).
The majority concludes that the trial court erred in failing to give the specific jury charge on contributory negligence. With this conclusion, I respectfully dissent.
We all know that dissents seldom provide an engine of change in case law or, for that matter, in anything else. Most, like cheap novels, are quickly read and as quickly laid aside. It must always be the majority that represents the force for change or the inertia to remain the same. Unfortunately, to remain the same in this matter only causes legal confusion, while the complexity of products liability law continues to escalate in both the trial and appellate courts of Alabama.
My intention here reflects something short of writing a treatise on the burden that the defense of contributory negligence places on the modern concept of products liability law in Alabama. Yet, I am under my own compulsion to offer a shorthand rendition in this dissent indicating why I believe that the defense of contributory negligence has no place in products liability cases and why it should give way to the defenses of product misuse and assumption of the risk when the causal relationship is present.
I believe we need to propel ourselves into the mainstream of American jurisprudence in regard to products liability law. The course we must follow to achieve such a goal is simple. In my opinion, we must either adopt the doctrine of strict liability, as it is stated in § 402A, Restatement (Second) of Torts (1965), or we must remove contributory negligence as a defense in products liability cases.
Since 1965, most American jurisdictions have adopted Restatement § 402A. I believe it would be sufficient to state that the doctrine is one that provides strict liability as an alternative method to traditional and conventional negligence-based torts and to a contract/warranty theory of recovery. In 1976, this Court flirted with the adoption of strict liability in the case of Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976). However, the Atkins Court slammed the door shut on strict liability and instead adhered to the proposition that "selling a dangerously unsafe product is negligence as a matter of law." 335 So.2d at 141. While the concept of "negligence as a matter of law" is closely enough related to the doctrine of strict liability so as to provide access to the purposes of the AEMLD, I find it to be more cumbersome than the doctrine of strict liability. After almost two decades, we have grown somewhat accustomed to the use of the basic negligence concepts in AEMLD cases. However, I believe it is a mistake to grow accustomed to carrying the excess baggage required by adhering to the contributory negligence defense. In my opinion, this devotion to contributory negligence has become the Achilles' heel of products liability law in Alabama.
It could well be that in its effort to hold fast to traditional and conventional notions of negligence-based theories of recovery, the majority feels some compulsion to provide for the defense of contributory negligence as its counterpart. There seems to be no other reason for such adherence to what I believe to be an unworkable defense. The dilemma this presents for the bench and bar is that contributory negligence as a defense cannot be logically (and should not be legally) reconciled with products liability theories. The consuming public of Alabama should be afforded a more level field for litigation purposes, and I believe that the complete abolition of the doctrine of contributory negligence in AEMLD cases would place us one step closer to such a goal.
*570 The issue of contributory negligence in AEMLD cases has been before this Court before. In Dennis v. American Honda Motor Co., 585 So.2d 1336 (Ala.1991), I mistakenly thought that this Court might have put an end to the problem of contributory negligence as a defense in AEMLD cases. However, such was not the case. In Dennis, this Court discussed the problems associated with the use of contributory negligence as a defense in AEMLD cases. We examined cases applying the law of products liability in this jurisdiction, as well as cases from other jurisdictions. We noted that "[a]lthough contributory negligence is recognized generally as a defense to AEMLD actions, the Atkins Court seemed to indicate that the defense is available only under certain defensive theories, e.g., `plaintiff's misuse of the product.'" Dennis, 585 So.2d at 1339. The Court then specifically held that, as it relates to accident causation, contributory negligence is not a proper defense in AEMLD cases. However, we also discussed the terms "product misuse" and "contributory negligence" and noted the state of confusion that surrounds these two terms.
In Dennis, we discussed Harley-Davidson, Inc. v. Toomey, 521 So.2d 971 (Ala.1988), and noted that contributory negligence was not a defense to the AEMLD claim in that case. Specifically, we stated:
"This Court [in Toomey] held that the motorcyclist was not contributorily negligent, because he `was wearing the helmet properly with all four snaps fastened' and `there [was] no evidence that he failed to exercise reasonable care in wearing the helmet.' 521 So.2d at 974 (citation omitted). Clearly, this Court referred to product misuse in discussing contributory negligence as a defense."
585 So.2d at 1340 (emphasis added).
Nevertheless, Dennis did not solve the entire problem. But, what Dennis did resolve was the separation of accident causation from the AEMLD liability law. The effect of the holding in Dennis was to bifurcate accident causation from products liability claims.
In Dennis, the plaintiff, while riding his motorcycle, collided with a log truck. It is undisputed that the plaintiff, because of his failure to exercise ordinary care, was contributorily negligent in causing the collision with the other vehicle. However, it is abundantly clear that his helmet, which was manufactured by Honda, did not contribute to the collision with the other vehicle. There was no products liability case to be made at the instant of impact; rather, the alleged defectiveness of the helmet came into question only during the milliseconds of the collision progression. In other words, it was only after the collision occurred that the helmet failed to protect the plaintiff, the failure resulting in liability due to a defective product. Clearly, the helmet was not designed to protect its user from colliding with another vehicle, but instead was designed and manufactured to prevent or minimize injuries once the user was involved in an accident.
The careful reader must realize that accident causation and injury to a person by a defective product are not always one and the same thing. When they are simultaneous so that no distinction can be made, then assumption of the risk becomes the tailor-made trial defense. (For a discussion of assumption of the risk, see my dissent in Campbell v. Cutler Hammer, Inc., 646 So.2d 573 (Ala. 1994). The product misuse defense may also fit into a similar defensive theory, depending on the facts involved.
In the instant case, Saint may have been contributorily negligent when she lost control of the automobile she was driving, causing it to leave the road and strike a tree, but it was only at that instant beyond initial impact when the seat belt failed to hold her in her seat that she received the extensive injuries that she sustained. So long as there is no collision, the fastened seat belt in a vehicle is not called into service. But the instant after initial impact, the fastened seat belt is called upon to protect its occupant from being thrown loose inside the vehicle or being thrown out of the vehicle. The purpose for which any seat belt is designed and manufactured is to secure a passenger in the vehicle seat so as to minimize injury to the passenger. When it fails to perform the very task for which it is designed, the passenger should be afforded an opportunity to prove that it is *571 a defective product. In my opinion, this Court was absolutely correct in its holding, as far as it went, in Dennis. However, I am afraid that the holding here today threatens to cancel the important forward step this Court took there. Therefore, I feel compelled to advocate my views on the eradication of contributory negligence as a defense in AEMLD cases.
I find that, ironically, the principal argument supporting the abolishment of contributory negligence as a defense in products liability cases is drawn from our 1976 Atkins case. In Atkins the Court stated that "the development of products liability law reflects society's attempt to balance its need for industrial expansion with the desire to protect the consuming public from unreasonably dangerous products." 335 So.2d at 137. This is a true and noble statement, but it becomes little more than a hollow gesture when contributory negligence is allowed to "trip up" the complex machinery of products liability law. Such a defense is especially troublesome when we already have the defense of product misuse in place to protect the defendants in products liability cases. It appears quite clear to me that the defense of misuse is more in line with the policy considerations underlying the adoption of the AEMLD.
The defense of misuse has a specialized meaning that is distinct from that of traditional contributory negligence. A true misuse occurs only when one is injured after using a product in some unforeseeable manner for which it was not reasonably intended. The actual defect in the product does not appear to reasonable observation until after the misuse has occurred.[1]
When asserting misuse as a defense under the AEMLD, the defendant must establish that the plaintiff used the product in some manner different from that intended by the manufacturer or the seller. Furthermore, the plaintiff's use of the product must not have been reasonably foreseeable by the manufacturer or the seller. If any particular misuse of a product by the user is foreseeable by the manufacturer or the seller, and the manufacturer or the seller either fails to eliminate the danger or fails to provide an adequate warning, then the defense of misuse should not be allowed to defeat the claims of the plaintiff.
As I stated above, I believe the defense of misuse is in line with the policy considerations underlying the adoption of the AEMLD. However, I believe the majority glosses over the importance of product misuse in order to simply hold that the trial court erred in failing to charge the jury on contributory negligence. In the instant case, the trial court charged the jury concerning the defense of product misuse. In other words, the trial court informed the jury that if they found it was either intended or foreseeable by the manufacturer that consumers would pull slack in their seat belts, then the defense of misuse would not bar the plaintiff from recovery. According to that charge, the jury found that the defense of misuse of the product was not applicable to the facts. The jury necessarily found that it was either intended or foreseeable by the manufacturer that a passenger would pull slack in the seat belt after it was fastened. Therefore, the plaintiff did not misuse the product by doing something that the manufacturer intended or foresaw that a passenger would do.
Clearly, if the manufacturer intended or foresaw that the consumers would use the product in this way, the manufacturer should not escape liability when the consumer uses a product in such a manner. However, now, under the majority's opinion, the jury will be further instructed that if it finds that the plaintiff was negligent because she pulled slack in her seat belt, then the defendant would not be liable. Therefore, under the majority's holding, even though the manufacturer knew that people would probably pull slack in the seat belt, i.e., it was foreseeable, it is irrelevant if the jury determines that the plaintiff failed to exercise due care in pulling the slack in the seat belt. It seems clear to me that a charge on contributory negligence does away with the issue of foreseeability in products liability cases. To allow the plaintiff's *572 negligence to be a complete bar to recovery for injury caused by a defective product directly opposes the policy behind the adoption of the AEMLD.
In conclusion, I believe that the majority's decision to continue to incorporate contributory negligence as a defense in products liability cases is a serious impediment to products liability law in the state of Alabama. The action of the majority on this question strikes a crippling blow to products liability law in this state. I insist that the time is right for the people of Alabama to have a products liability plan, at the hands of this Court, that encompasses the best in America instead of the worst. For the above stated reasons, I dissent.
COOK, Justice (dissenting).
The Court today in this case and in Campbell v. Cutler Hammer, Inc., 646 So.2d 573 (Ala.1994), revives the doctrine of contributory negligence as a defense in an action based on the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). Because I believe the rules set forth in these cases represent a substantial and, perhaps, final departure from this Court's intent in Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976), and Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976), I respectfully dissent.
In Atkins and Casrell, the Court joined a majority of American jurisdictions in adopting a form of strict liability for the manufacture and sale of defective products. Atkins, 335 So.2d at 138. The substance of the cause of action recognized in those cases derived from the Restatement (Second) of Torts § 402A (1965), with one primary distinctionor two primary distinctions according to these two cases released today.
The first distinctionabout which there is no disputeconsists of the defense available to a seller based on "the lack of any causal relationship between his conduct and the defective condition of the product." Atkins, 335 So.2d at 141. The application of this defense in the ordinary context allows an intermediate seller or distributor to escape liability upon proof that "he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer," id. at 143, and this defense "is not to be confused with the burden which rests on the plaintiff to prove that his injuries and damages were the proximate result of the defective condition of the product." Id. at n. 4. See, also, E. Martin, Alabama's Extended Manufacturer's Liability Doctrine (AEMLD), 13 Am.J.Trial Advoc. 983, 1046-49 (1990).
The rule expressed in this case is based on what the majority perceiveserroneously, I believeto be a second distinction between the AEMLD and § 402A. The majority concludes that the AEMLD in its pristine form recognizes the defense of contributory negligence in addition to the defense of product misuse. In this case, for example, it holds that the trial court erred in failing to instruct the jury, in accordance with the defendant's requested charge number 22, that Saint could not recover if it found that she "was negligent in the operation or use of the seat belt system installed on the 1984 Chevrolet Celebrity" and that her negligence in that regard "caused or proximately contributed to cause [her] injuries."
I believe this holding contravenes the intent of the Court in Atkins and Casrell. To be sure, both cases describe one of the available affirmative defenses in terms of the plaintiff's "negligence." Atkins, 335 So.2d at 143 ("contributory negligence"); Casrell, 335 So.2d at 134 ("negligent conduct of the plaintiff in using the product"). For a number of reasons, however, I am convinced that the Court intended to adopt, in practice, the § 402A concept of contributory negligence.
First, under the category of "defenses," Casrell set forth, in addition to lack of causal relationship, only two affirmative defenses (1) assumption of the risk, and (2) "the negligent conduct of the plaintiff in using the product." 335 So.2d at 134. This statement of defenses must be compared with its counterpart in Atkins, which, in addition to lack of causal relationship and assumption of the risk, listed only "contributory negligence." 335 So.2d 134. Thus, Atkins and Casrell listed only two defenses relating to the plaintiff's *573 conduct, namely, (1) assumption of the risk and (2) contributory negligence. Those two casesunlike the majority's opinion in this casedid not recognize three such defenses, namely, (1) assumption of the risk, (2) contributory negligence, and (3) product misuse.
Second, Atkins expressly characterized contributory negligence as the "plaintiff's misuse of the product." Id. (emphasis added). This characterization is consistent with § 402A, which does not recognize contributory negligence as "a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." Section 402A, comment n. See, also, E. Martin, supra, at 1037 ("Most courts adopting any form of strict liability in tort have distinguished the concept of `misuse' as a separately allowable defense, while continuing to reject the traditional defense of contributory negligence altogether"). Similarly, comment h explains:
"If the injury results from abnormal handling, as where a bottled beverage is knocked against a radiator to remove the cap, ... the seller is not liable. Where, however, he has reason to anticipate that danger may result from a particular use,... he may be required to give adequate warning of the danger...."
(Emphasis added.)
Indeed, as to the general relevancy of the comments to § 402A, the Court added the following caveat: "Although our holding modifies the Restatement's theory of strict liability, the Comment, in large measure, retains its utility; therefore, we attach the official Comment to § 402A as an appendix hereto." Atkins, 335 So.2d at 143 n. 5 (emphasis added). This caveat thus suggests that the Court regarded the comments as particularly relevant in "fleshing out" the cause of action. Because the comments retain the concept of the plaintiff's fault only in the senses of assumption of the risk and product misuse, I must conclude that the Court in Atkins and Casrell intended to do likewise, that is, I understand those cases as effectively adopting the substance of § 402A comments, as they relate to product misuse, but, merely from deference to long-standing Alabama tradition, engrafting fault-based terminology on the substantive concepts enshrined in the comments. In other words, I understand Atkins and Casrell as equating contributory negligence with product misusedefined as a use that is not reasonably foreseeable.
Under this rule, the affirmative defense of "contributory negligence" would bar Saint's recovery only upon a finding that the manufacturer could not reasonably have anticipated that operators of 1984 Chevrolet Celebritys would occasionally fail to eliminate excess slack from their seat belts. Because this case represents a substantial departure from this rule, I respectfully dissent.
KENNEDY, J., concurs.
NOTES
[1] By contrast, when a person knows of a defect or has been warned of a specific danger and proceeds to use a product in an unforeseeable manner, such product utilization is more properly classified as assumption of the risk.